**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | |
| Respondent, ) | |
| ) | No. CV 20-198-TUC-CKJ |
| vs. ) | CR 17-602-TUC-CKJ |
| ) | |
| Fausto Velazquez, ) | **ORDER** |
| ) | |
| Defendant/Movant. ) | |

Pending before the Court is the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (CV 20-198, Doc. 1: CR 17-602, Doc. 258) filed by Movant Fausto Velazquez ("Velazquez"). A response (CV 20-198, Doc. 6) and a reply (CV 20-198, Doc. 13) have been filed.

I. *Factual and Procedural Background*

On April 12, 2017, Velazquez, along with co-defendants Roxanne Carpenter ("Carpenter"), Phoelix Begay ("Begay"), and Brian Meyers ("Meyers") were indicted on conspiracy to kidnap, and kidnapping charges.

The Ninth Circuit Court of Appeals has summarized the factual background of this case as follows:

> In March 2017, Roxanne Carpenter, Fausto Velazquez, Phoelix Begay, and Brian Meyers (together, codefendants) kidnapped Angel Gonzalez—who was suspected of stealing marijuana from a Mexican cartel—to turn him over to the cartel in exchange for thirty pounds of marijuana. After a five-day trial, a jury convicted Carpenter and Velazquez of conspiracy to kidnap, in violation of 18 U.S.C. § 1201(a)(1) and (c), and kidnapping, in violation of 18 U.S.C. § 1201(a)(1). . .
> * * * * *

> In early 2017, Gonzalez, who worked for a member of the Mexican cartel, and Velazquez, transported twelve 88-pound bundles of marijuana from Hereford, Arizona to Carpenter's home. At some point, a portion of the marijuana disappeared from Carpenter's home. The cartel suspected that Gonzalez was responsible for the missing marijuana, and word of there being a bounty on his head spread through the community. Armed cartel members went to Carpenter's home, looking for the missing drugs and Gonzalez. Two days later, the police went to her house and asked questions about the cartel members who had recently visited the house.
>
> In March 2017, Begay informed Carpenter that he could no longer hold off the cartel, and that the cartel was going to make Velazquez pay for the missing marijuana. Meyers testified at trial that he believed that the codefendants planned to kidnap Gonzalez to turn him over to the cartel to protect their "family." Velazquez negotiated with the cartel, arriving at a final price of thirty pounds of marijuana in exchange for Gonzalez.
>
> On March 29, 2017, Meyers borrowed Carpenter's vehicle, first picking up Gonzalez from his apartment, then Begay from his home, under the pretense that they were taking Gonzalez to Elfrida, Arizona so that he could detox from drugs. On the way, Meyers changed the plans and they drove instead towards Douglas, Arizona to obtain methamphetamine. Gonzalez testified that after he fell asleep, he felt a taser[2] on his neck. Begay and Meyers then handcuffed him, shackled his legs, duct-taped his hands, feet, and face, and shoved him into the car's trunk.
>
> > [2]The actual weapon used was a cattle prod.
>
> Begay and Meyers drove to a Safeway outside Bisbee, Arizona to meet Carpenter and Velazquez. While Meyers kept watch in the car, Carpenter, Velazquez, and Begay entered the store, where Carpenter bought water, candy, and duct tape. Carpenter decided that the group needed to leave the Safeway parking lot, and they drove to the home of her friend, Keri Hall. At Hall's house, the codefendants waited to hear from the cartel, and smoked methamphetamine. Meanwhile, Gonzalez remained bound in the trunk. When the codefendants learned that the cartel members could no longer meet them on the American side of the border, Carpenter volunteered to take Gonzalez to Mexico. She drove him, still in the trunk, through the Naco, Arizona port of entry. Just across the border, Gonzalez found the trunk latch, opened the trunk, yelled for help, and managed to exit the trunk. Carpenter accelerated away, ditched her car, and then attempted to reenter the United States on foot.

*United States v. Carpenter*, 923 F.3d 1172, 1176–77 (9th Cir. 2019).

Begay and Meyers entered guilty pleas. Velazquez and Carpenter proceeded to trial.

Velazquez asserts, prior to trial, Carpenter's counsel indicated he would present a duress defense at trial and Velazquez's attorney ("trial counsel") indicated he would put on a joint defense. However, Velazquez maintained he had no part in the kidnapping and that his involvement was limited to translating and relaying messages for and on behalf

- 2 -

of Carpenter. Further, trial counsel did not submit an offer of proof in support of a duress defense. However, following an evidentiary hearing, this Court concluded Carpenter could present a duress defense; Velazquez asserts this opened to the door to the introduction of evidence highly prejudicial to Velazquez. Nonetheless, trial counsel did not seek a severance or file any motions to limit the introduction of prejudicial evidence.

Carpenter's counsel states:

> Because witness Keri Hall, cooperating codefendant Brian Meyers, alleged victim Angel Gonzalez and the text messages in Fausto Velazquez's cell phone all implicated Fausto Velazquez in the kidnapping, [Carpenter's Counsel] felt that Fausto Velazquez's only realistic defense would be the same duress defense that Roxanne Carpenter intended to raise.

Affidavit of S. Jonathan Young, Esq. (Doc. 1-1, Ex. A., ¶6). At the August 24, 2017, pretrial conference, trial counsel stated he would not be presenting a duress defense.

After the pretrial conference, trial counsel, Carpenter's counsel, and the prosecutor met to discuss the case. After trial counsel asked when he would be given the witness statements, the prosecutor informed him that he had had the statements for months. Carpenter's counsel provided trial counsel with the starting Bates page number for each witness statement. Carpenter's counsel states, that while his memory is indistinct, his overall impression was that trial counsel "was unaware of Keri Hall's impending testimony about Fausto Velazquez's participation in the alleged kidnapping and that [trial counsel] was unaware of the text messages in Fausto Velazquez's phone coordinating the alleged kidnapping." *Id*. at ¶ 12.

Carpenter's counsel asserts if trial counsel had been prepared to call Velazquez in his own case:

> 1. "the jury might have all been better able to evaluate the threat that Angel Gonzalez's theft of cartel drugs presented to Angel Gonzalez's friends[;]"
>
> 2. trial counsel "might have been better able to probe Fausto Velazquez's complete lack of any foundation for his histrionic and drug-addled outburst[,] instead of the government pretending Angel Gonzalez "was inches away from his own death[;]"
>
> 3. testimony crucial to Velazquez's duress defense (because "he and Angel Gonzalez were the only two people with first hand knowledge of the events which necessitated Angel Gonzalez's involuntary meeting his own Aunt Brenda."

- 3 -

1  *Id*. at ¶¶ 17, 19, 20.

2  Evidence presented at trial included testimony that many people had gone to Carpenter's house, threatened Velazquez, and put guns to Velazquez's head. The evidence also included text messages between Velazquez and co-defendants. This included a summary of negotiations with the cartel that was sent from Velazquez's iPhone to Carpenter to the day before the kidnapping. Trial counsel elicited testimony from an agent that the evidence did not show Velazquez was using the phone during the relevant texts, calls, and browsing. However, Hall testified Velazquez was on a phone the evening of the offenses; further, Velazquez told her that he had spoken to the cartel while he was at her house, he was on the phone with his people while Carpenter took the victim across, the victim had jumped out of the car, and he did not know how the person could have gotten out of the trunk. Hall admitted she used methamphetamine, had been an addict, her timeline did not match times established from previously admitted testimony, and Velazquez never admitted ownership/possession of the firearm.

The victim testified that Velazquez had seemed concerned about the victim and had texted the victim that he was not turning him in or giving him up. He further testified that he did not believe Velazquez would be involved because he was like the victim's brother, but he then heard Velazquez on the phone saying, "Jefe, I got him. Where do I go? And that means, Boss I got him. Where do I go, in Spanish." Reporter's Transcript ("RT") 8/29/17, p. 83.

Co-defendant Meyers testified the kidnapping was discussed and agreed upon by him, Carpenter, and Velazquez; further Velazquez role was that of negotiator with the cartel. The final negotiated price for the victim was 30 pounds of marijuana upon delivery and an undetermined amount later. After they watched Carpenter drive across the border with the victim, Velazquez received a call from the cartel, who informed Velazquez that the cartel had seen the victim get out of the trunk of the car and hop down the road. Carpenter testified the kidnapping had been premeditated as she had met with

discussed the kidnapping with Velazquez and other co-defendants prior to the kidnapping.

During trial, trial counsel presented a brief opening statement and cross-examined five of the twelve witnesses. Velazquez asserts trial counsel frequently elicited testimony adverse to Velazquez. No case-in-chief was presented on behalf of Velazquez. Velazquez compares this to Carpenter's counsel who called two witnesses in support of Carpenter's duress defense (including government-cooperating co-defendant Meyers whom the government did not call to the stand) and presented Carpenter's testimony. Velazquez asserts Carpenter's testimony was devastating to Velazquez as it contradicted Velazquez's minimal involvement defense. Further, trial counsel did not cross-examine Carpenter or one of her two witnesses. As to Meyers, trial counsel (who expressed surprise that Carpenter's counsel was calling Meyers), provided minimal cross-examination.

Additionally, trial counsel did not object to the admission of Carpenter's statements to FBI agents as hearsay as to Velazquez, did not seek a mistrial, and did not request a limiting instruction.

While jury instructions were being discussed on August 30, 2017, the prosecutor questioned whether a duress defense had been presented on behalf of both Carpenter and Velazquez. trial counsel stated he was presenting a duress defense:

> The Court: Okay. So your client isn't claiming duress defense, is he?
>
> [Trial Counsel]: Yes, he is.
>
> The Court: Oh, he is?
>
> [Trial Counsel]: Yes. I'm sorry, I'm confused. He'd like to be included in [the duress instruction] as well.
>
> The Court: Okay. All right.

RT 8/30/17, p. 196. Velazquez asserts trial counsel never discussed the change in strategy with him.

During closing argument, trial counsel stated Velazquez did commit the charged

crimes, but only did so under duress, and discussed facts that had not been presented at trial. Velazquez asserts:

> Trial Counsel flat-out told the jury that the government had met its burden in proving the kidnapping charge despite there being no evidence that Velazquez had personally committed the actual kidnapping. And Trial Counsel failed to address the conspiracy charge altogether. Despite asking the jury members to excuse Velazquez's criminal conduct under a theory of duress, Trial Counsel repeatedly told them that "[t]here was no excusing" what Velazquez had done. Trial Counsel never addressed the necessary elements of duress, nor attempted to show how the evidence adduced at trial might satisfy those elements. He even told the jury that he did not know whether Velazquez had ever been threatened, which signaled he had never discussed it with his client[.]

Petition (Doc. 1-1, p. 10), *citations omitted*.

The jury returned guilty verdicts on both counts.

The draft pre-sentence report ("PSR") prepared for Velazquez proposed a base offense level of 32, a three-level increase pursuant to USSG § 3C1.3 on the ground that Velazquez committed the offense while under pretrial supervision in a separate matter, and a two-level increase pursuant to USSG § 2A4.1(b)(3) on the ground that the offense involved the use of a dangerous instrument. Trial counsel did not object to either guideline enhancement and did not request any downward adjustments, variances, or departures on Velazquez's behalf. Government counsel objected to the USSG § 2A4.1(b)(3) increase, referencing the Court determination it was inapplicable in co-defendant cases. Trial counsel did challenge some minor factual assertions.

The government objected to the draft PSR and requested the sentence be enhanced under USSG § 3B1.1, as Velazquez was an organizer, leader, manager, or supervisor of the conspiracy and an upward adjustment under USSG § 2A4.1(b)(7), asserting the offense was committed in connection with a drug trafficking offense. Trial counsel did not respond to the government's objections.

Trial counsel asked the Court to consider that Velazquez was simply a translator and not a "heavy" in the conspiracy, but did not seek a mitigated role adjustment under USSG § 3B2.2 and made no specific sentencing recommendation. Although trial counsel did not object to the draft PSR, this Court declined to impose the two-level adjustment

for use of a dangerous weapon or any of the government's requested enhancements; Velazquez was sentenced to two concurrent terms of 140 months in the custody of the Bureau of Prisons to be followed by a 60 month term of supervised release.

Velazquez appealed and, on May 19, 2019, the Ninth Circuit Court of Appeals affirmed the convictions.

On May 8, 2020, Velazquez filed a Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody and this civil action was initiated (CV 20-198, Doc. 1). Velazquez argues (I) trial counsel was ineffective for conducting an inadequate investigation into the facts and available defenses, for being unprepared for trial, and in presenting Velazquez' defense at trial; (II) trial counsel was ineffective in putting on a last minute duress defense without having presented any evidence; (III) trial counsel was ineffective in failing to address Carpenter's antagonistic defense or object to the introduction of Carpenter's post-arrest statements against Velazquez; (IV) trial counsel was ineffective at sentencing; (V) trial counsel's cross-examination of witnesses was ineffective, and; (VI) the cumulative effect of trial counsel's errors deprived Velazquez of a fair trial.

The government filed a response on October 9, 2020 (CV 20-198, Doc. 6). Velazquez filed a reply on June 18, 2021 (Doc. 13).

II. *Standard – Ineffective Assistance of Counsel*

Claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on such a claim, a petitioner must show: (1) deficient performance – counsel's representation fell below the objective standard for reasonableness and (2) prejudice – there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 687-88. Although a petitioner must prove both elements, a court may reject a claim upon finding either that counsel's performance was reasonable or that the

claimed error was not prejudicial. *Id*. at 697.

Deficient performance is one in which an attorney's errors were so great he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Weaver v. Massachusetts*, — U.S. —, 137 S. Ct. 1899, 1910 (2017), *quoting Strickland*, 466 U.S. at 687. An objective standard applies to proving such ineffectiveness, and requires a petitioner to demonstrate that counsel's actions were "outside the wide range of professionally competent assistance, and that the deficient performance prejudiced the defense. *United States v. Houtcens*, 926 F.2d 824, 828 (9th Cir. 1991), *quoting Strickland*, 466 U.S. at 687-90. The reasonableness of counsel's actions is judged from counsel's perspective at the time of the alleged error in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Strickland*, 466 U.S. at 689. Indeed, "judicial scrutiny of counsel's performance must be highly deferential[.]" *Bell v. Cone*, 535 U.S. 685, 698 (2002), *quoting Strickland*, 466 U.S. at 689. "[C]ounsel is strongly presumed to strongly presumed have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Further, tactical decisions with which a defendant disagrees cannot form the basis for a claim of ineffective assistance of counsel. *Morris v. California*, 966 F.2d 448, 456 (9th Cir. 1996). "Mere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation." *Gustave v. United States*, 627 F.2d 901, 904 (9th Cir. 1980). Additionally, the court need not determine the actual reason for an attorney's actions, as long as the act falls within the range of reasonable representation. *Morris*, 966 F.2d at 456-457.

III. *Grounds One, Two and Five: Ineffective Assistance of Counsel - Inadequate Investigation into Facts and Defenses, Unprepared for Trial, Presentation of Defense, Last-Minute Duress Defense, and Cross-Examination*

Velazquez asserts trial counsel was ineffective by being unfamiliar with the facts and legal issues presented in the case. He points to trial counsel's statements at pre-trial

proceedings which indicate he had not timely reviewed and digested the disclosures, including important witness interviews.  Further, two weeks before trial, trial counsel stated he did not know if he would be filing any substantive motions or whether he would have any reciprocal disclosure to provide, because he was "still deciding what to do." RT 7/25/17, pp. 16, 22.  Velazquez asserts trial counsel continued to not grasp the basic facts of the case despite the two-week trial continuance granted by the Court (e.g., needed clarification as to the victim).  Further, during a hearing the day before trial, trial counsel maintained he would be presenting a defense based on Velazquez role only as a translator. Following that hearing, trial counsel indicated he was still waiting for disclosure of witness statements; counsel for Carpenter identified the Bates numbers of the witness statements for trial counsel.  Additionally, the impression of Carpenter's attorney was that trial counsel was unaware of the expected testimony of Keri Hall ("Hall") regarding Velazquez's participation in the kidnapping and was unaware of the text messages in Velazquez's phone coordinating the kidnapping.

Velazquez also asserts trial counsel's ineffectiveness is exhibited by trial counsel's failure to review a potential duress defense with Velazquez, failure to discuss whether Velazquez wanted to testify to support a duress defense, presentation of a minimal opening statement, limited questioning of witnesses, and the failure to present any evidence despite eventually claiming Velazquez acted under duress.  Further, Velazquez asserts trial counsel conveyed a lack of understanding of the facts of the case during the closing argument.

Additionally, in discussing trial counsel conduct during the sentencing proceedings, Velazquez asserts trial counsel discussed evidence that an adequate investigation would have led to its presentation during trial.  Specifically, Velazquez argues evidence regarding Begay using Velazquez's telephone and Velazquez working at the Texas Roadhouse on the night the kidnapping was planned.

Assuming, for purposes of this Order, trial counsel's was ineffective in his

investigation, preparation, and presentation for trial, untimely decision to pursue a duress defense, and cross-examination,[1] the Court considers whether Velazquez has shown he was prejudiced by the deficient representation, i.e., there is a reasonable probability that, but for trial counsel's unprofessional errors, the result of the proceeding would have been different. Velazquez argues that better preparation would have allowed trial counsel to pursue a meaningful duress defense, including possibly presenting the testimony of Velazquez. Indeed, Velazquez asserts there was substantial evidence Velazquez had acted under duress; in fact, he had been directly threatened and had guns aimed at his head.

More preparation by trial counsel may have resulted in a different decision as to the trial strategy. *See e.g., Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (prejudice may be shown where reasonable probability counsel would have made a different decision if he had investigated). However, it has not been shown that the result of the proceeding would have been different. Rather, substantial evidence Velazquez may have been acting under duress was presented to the jury. As summarized by the government:

> The text message stating "Ghozt, I dealing with people showing up to my house" was admitted. See DOC 3 – 2, p. 32; EX 44. Evidence that Velazquez had been threatened was admitted. Evidence that the defendant arguably had a

---

[1] As previously stated, a Court need not determine whether alleged failures fell below an objective standard of reasonableness where the claims do not survive the prejudice prong. *Murtishaw v. Woodford*, 255 F.3d 926, 953 (9th Cir. 2001), *citing Strickland*, 466 U.S. at 697. In other words, the Court does not address the government's arguments regarding whether a lack of presence (and solely acting as an translator) was a viable defense, *see e.g. Pinkerton v. United States*, 328 U.S. 640 (1946), *United States v. Moran*, 493 F.3d 1002, 1009-10 (9th Cir. 2007), whether the effect of drug use by witnesses, trial counsel's questioning the designation of the named victim as a victim, whether trial counsel's questioning (1) the witnesses' credibility, (2) the threats made and the concern Velazquez had when he provided the victim with a gun, (3) the assumptions made by the witnesses, and (4) conflicts between the timeline of witnesses' testimony with other evidence, whether a duress defense was viable in light of no showing of immediate threat of death or serious bodily harm when the cartel's threats and placement of guns to Velazquez's head occurred almost two months prior to the planning and execution of the kidnapping, and whether the cumulative nature of the Carpenter's duress defense to the government's disclosure leads to a conclusion that trial counsel provided effective assistance and made tactical decisions to which the Court should defer.

>  well-grounded fear of the cartel as he had a gun to his head was admitted. Evidence that the defendants believed the cartel knew where they all were was admitted through the testimony of Carpenter and Meyers. Evidence that Velazquez tried to protect A.G. prior to the kidnapping was admitted through the text messages and the testimony by A.G. Defense counsel ultimately ensured that the evidence of duress was admitted at trial and actually saved his client from being subjected to cross-examination as the defendant did not need to testify to admit previously admitted evidence and testimony. Defense counsel ultimately argued the evidence of duress in his closing argument. Ultimately, the jury rejected both defendants' claim of duress, not because the evidence was not effectively presented and argued, but because the defendants did not show they committed the crime due to pressure of an immediate threat of death or serious bodily injury.

Response (Doc. 6, p. 19). Trial counsel emphasized Velazquez had guns pointed to his head and was concerned for the victim, argued Velazquez was acting under duress, and challenged the credibility and assumptions of witnesses. Further, cross-examinations by Carpenter's counsel preceded those conducted by trial counsel; prejudice has not been shown because between both counsel, the cross-examinations were effective.

Trial counsel, however, failed to cross-examine Carpenter and did not conduct a thorough cross-examination of Myers. However, the majority of evidence provided by Carpenter and Myers was corroborated by other evidence presented at trial. Statements particularly damaging to Velazquez (e.g., Velazquez was not in fear) was disputed by other evidence. The Court does not find there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Rather, in light of the overwhelming evidence of Velazquez's guilt, even if trial counsel had thoroughly cross-examined Carpenter and Myers, the Court finds there is not a reasonable probability the jury would not have found Velazquez guilty.

Had trial counsel's conduct been different, additional cumulative evidence of duress may have been presented to the jury. However, as stated by the Ninth Circuit, "the government presented more than enough evidence to defeat Velazquez' duress defense and overwhelming evidence as to his guilt for both conspiracy to kidnap and kidnapping." *United States v. Carpenter*, 923 F.3d 1172, 1183 (9th Cir. 2019). Further, the evidence of duress was same for both Carpenter and Velazquez; in other words, some of the

evidence presented by Carpenter's attorney supported Velazquez's defense. Moreover, the evidence of duress was stronger for Velazquez because the threats had been made directly to Velazquez and the guns had been pointed at Velazquez's head. This evidence was presented to the jury and argued during closing arguments. The Court finds Velazquez has not shown there is a reasonable probability that, but for trial counsel's unprofessional errors, the result of the proceeding would have been different as to Grounds One, Two, and Five.

IV. *Ground Three: Ineffective Assistance of Counsel - Failure to Address Carpenter's Antagonistic Defense or Object to Introduction of Carpenter's Post-Arrest Statements Against Velazquez*

Velazquez asserts it should have been evident when Carpenter submitted her offer of proof to establish duress that Carpenter would have to implicate Velazquez in the conspiracy and other illegal acts to explain why she possessed a well-grounded fear. Therefore, trial counsel should have either altered his planned defense so it aligned with Carpenter's defense or moved to sever before trial. If a severance would not have been granted, Velazquez cannot show that he was prejudice by this alleged deficiency.

In this case, all of the co-defendants, including Velazquez, were indicted on April 12, 2017. In other words, they were initially joined by the indictment. The question is whether the joinder of the defendants was "so manifestly prejudicial that it outweigh[ed] the dominant concern with judicial economy . . . " *United States v. Doe*, 655 F.2d 920, 926 (9th Cir. 1980), *citations omitted*. Severance of properly joined defendants is not required unless "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants" or a joint trial would "prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). The Ninth Circuit has stated:

> It is well-established that in the federal system there is a preference for joint trials where defendants have been jointly indicted. *Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). Under certain circumstances, none of which are present here, Federal Rule of Criminal Procedure 14 provides

> relief from prejudicial joinder. Fed. R. Cr. P. 14(a) (stating "[i]f the joinder of ... defendants in an indictment ... appears to prejudice a defendant ... the court may ... sever the defendants' trials"). We have developed a four-part test to aid the district court's determination, including: "(1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether Appellants could show, with some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." [*United States v. Sullivan*, 522 F.3d 967, 982 n. 9 (9th Cir. 2008) (internal quotation marks and citation omitted).

*United States v. Hernandez-Orellana*, 539 F.3d 994 (9th Cir. 2008). "The burden is on the defendant to show 'clear,' 'manifest,' or 'undue' prejudice from a joint trial." *United States v. Mikhel*, 889 F.3d 1003, 1046 (9th Cir. 2018), *quoting United States v. Polizzi*, 801 F.2d 1543, 1553–54 (9th Cir. 1986). Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. "[L]ess drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id*.

Velazquez asserts the jury could not have accepted his minimal participant defendant while also accepting Carpenter's duress defense. Because Carpenter's testimony and post-arrests statements implicated Velazquez in the planning stages, Velazquez asserts the only hope of presenting a minimal participant defense would have been in a separate trial. Further, Velazquez argues his duress defense would have been stronger in a separate trial: Carpenter's confession suggested the kidnapping was done for monetary gain, which weakened the duress defense.

Additionally, Velazquez asserts a more favorable outcome would have been reasonably probable had a severance been granted. Not only would Carpenter's testimony and confession not have been admitted against Velazquez, it is likely the government would not have called Myers as a witness because he had changed his story shortly before the trial. As such, there would have been little evidence regarding Velazquez's agreement

to participate in and plan the kidnapping. Although evidence of internet searches on Velazquez's cell phone would have been admissible, the evidence would also have established the co-defendants used the phones of others. Velazquez also points to the fact that he was the only co-defendant who did not interact with the victim or ride in the vehicle on the day of the kidnapping.

A duress defense, in and of itself, does not warrant a severance. Indeed, a number of cases find that a severance is not warranted even when a co-defendant is alleged to be the person exerting the duress. *See e.g. United States v. Arias–Villanueva*, 998 F.2d 1491, 1502 (9th Cir.1993), *overruled on other grounds*. Further, because defendants were charged with conspiracy, a joint trial may have been appropriate "because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the evidence would be admissible against each of them in separate trials." *United States v. Boyd*, 78 F.Supp.3d 1207, 1212 (N.D.Cal. 2015). For example, even when a co-defendant is alleged to have coerced a defendant into joining a conspiracy a severance was not warranted because the evidence would have been admissible against defendant in a separate trial. *Arias-Villanueva*, 998 F.2d at 1506-07.

Moreover, many of the post-arrest statement were made by co-defendants in furtherance of the conspiracy and, as such would have been admissible against Velazquez in a separate trial. Fed.R.Evid. 801(d)(2)(E). Additionally, during her testimony Carpenter discussed her statements to agents including statements made in the furtherance of the conspiracy.

Additionally, the Ninth Circuit found that improperly admitted hearsay statements were cumulative to other evidence already presented and Velazquez, therefore, was not prejudiced. Similarly, the evidence provided by Hall's testimony and from the cell phones was corroborated by the testimony of Carpenter and Meyers. In such circumstances, the Court finds Velazquez was not prejudiced by the failure of trial counsel to request a severance.

Although the Ninth Circuit determined this Court's failure to give a *sua sponte* limiting instruction regarding hearsay testimony that implicated Velazquez constituted plain error and determined that the testimony was prejudicial, the Ninth Circuit also concluded that the statements were cumulative of other evidence. In light of the "overwhelming," indeed a "mountain of evidence," against Velazquez, *United States v. Carpenter*, 923 F.3d 1172, 1183 (9th Cir. 2019), the Court finds it difficult to conclude Velazquez was prejudiced by counsel's failure to seek a mistrial or a limiting instruction.

However, additional statements were not cumulative of other evidence. For example, Carpenter testified that Velazquez and his people had stolen the weed, Velazquez did not fear retribution from the cartel for the missing marijuana, and had connections with the cartel. The majority of the evidence admitted *solely* because of the joinder of defendants for trial, though, would have been admissible against Velazquez in a separate proceeding. Moreover, evidence was presented that disputed these statements (e.g., guns were pointed to Velazquez's head). The Court does not find there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Rather, had trial counsel moved for a mistrial or a limiting instruction, the Court likely would have given a limiting instruction. Because of the overwhelming evidence of Velazquez's guilt, there is not a reasonable probability the jury would not have found Velazquez guilty.

V. *Ground Four: Ineffective Assistance of Counsel - Sentencing*

Velazquez asserts trial counsel was ineffective during the sentencing proceedings. The *Strickland* standard also governs claims for ineffective assistance of counsel in noncapital sentencing proceedings. *Daire v. Lattimore*, 812 F.3d 766, 767 (9th Cir. 2016), *citing Lafler v. Cooper*, 566 U.S. 156 (2012), and *Glover v. United States*, 531 U.S. 198 (2001).

Velazquez asserts trial counsel was ineffective for failing to file a sentencing

memorandum. He also asserts trial counsel presented no mitigating evidence, but focused on factual arguments that were irrelevant for sentencing purposes.  However, trial counsel did present mitigating evidence regarding Velazquez's age, strong family ties, prior history as an athlete, and steady job.  Although the guideline range was calculated to be 168 to 210 months of imprisonment, with a recommended sentence of 210 months by the probation officer, Velazquez was sentenced to a below-guideline sentence of 140 months of imprisonment.  The Court finds there is not a reasonable probability that the presentation of additional mitigating evidence would changed the result of the proceeding. The Court finds trial counsel was not ineffective for failing to file a sentencing memorandum or present additional mitigating evidence; further, Velazquez has not shown he was prejudiced by these alleged deficiencies.

Velazquez also assert trial counsel was ineffective for failing to object to a number of objectionable guideline recommendations. Specifically, he asserts trial counsel should have objected to the PSR's imposition of a two-level enhancement for the cattle prod, objected to the government's request that Velazquez receive a two-level upward adjustment for being an organizer under USSG §3B1.1©, and a two-level enhancement under §2A4.1(b)(7) because the offense was committed in connection with a drug trafficking offense.  However, the Court declined to impose the two-level adjustment for use of a dangerous weapon or any of the government's requested enhancements.  Trial counsel's failure to make these objections, therefore, did not result in prejudice to Velazquez.

Velazquez further argues trial counsel was ineffective by not requesting an imperfect duress departure under USSG § 5K2.12.  Velazquez acknowledges that, although requested, the Court declined to grant Carpenter an imperfect duress departure. However, he argues he had a stronger case for the departure because he was directly and physically threatened.  In other words, "[w]hatever coercion Carpenter faced was not coupled with a threat of physical injury or a similar injury[.]" Petition (Doc. 1-1, p. 65).

Additionally, there was evidence "Velazquez was personally on the hook for the missing marijuana load, and that another person who was held responsible had already been beaten up and tortured by the cartel because of the stolen drugs." *Id*. However, the jury had rejected a duress defense. Further, evidence presented at trial established that Velazquez had engaged in negotiations with the cartel. In light of this, the Court finds trial counsel is presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Simply because Velazquez disagrees with the decision cannot form the basis for a claim of ineffective assistance of counsel. *Morris*, 966 F.2d at 456; *Gustave*, 627 F.2d at 904. The Court finds Velazquez has not shown trial counsel was ineffective or that he was prejudiced by the alleged deficiency.

VI. *Ground Six: Ineffective Assistance of Counsel - Cumulative Effect*

Velazquez asserts the cumulative effect of all of trial counsel's errors "is absolutely overwhelming and amounts to clear prejudice." Petition (Doc. 1-1, p. 68). The Ninth Circuit has recognized, "When an attorney has made a series of errors that prevents the proper presentation of a defense, it is appropriate to consider the cumulative impact of the errors in assessing prejudice." *Rogers v. Dzurenda*, 25 F.4th 1171, 1190–91 (9th Cir. 2022), *quoting Turner v. Duncan*, 158 F.3d 449, 457 (9th Cir. 1998). In light of the mountain of evidence against Velazquez, however, whether considered separately or together, the Court finds the errors/omissions identified by Velazquez do not undermine confidence in the verdicts against him and do not establish prejudice. *See Strickland*, 466 U.S. at 694.

VII. *Certificate of Appealability ("COA")*

Rule 11(a), Rules Governing Section 2255 Proceedings, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a

final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1). Here, the Petition is brought pursuant to 28 U.S.C. § 2255. This Court must determine, therefore, if a COA shall issue.

The standard for issuing a COA is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253© is straightforward: The movant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. In the certificate, the Court must indicate which specific issues satisfy the showing. *See* 28 U.S.C. § 2253(c)(3).

The Court finds that jurists of reason would find it debatable whether the Petition stated a valid claim by establishing a showing that Velazquez was prejudiced by the ineffective assistance of trial counsel. A COA shall issue.

Accordingly, IT IS ORDERED:

1. The Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (CV 20-198, Doc. 1; CR 17-602, Doc. 258) is DENIED.

2. Cause No. CV 20-198 is DISMISSED.

3. The Clerk of the Court shall enter judgment and shall then close its file in

Cause No. CV 20-198.

4. A Certificate of Appealability shall issue in this case.

DATED this 20th day of December, 2022.

_____
Cindy K. Jorgenson
United States District Judge